# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 19-cr-10115-PBS |
| | ) |
| DAVINA ISACKSON, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT DAVINA ISACKSON'S MEMORANDUM OF LAW CONCERNING MASSACHUSETTS RULE OF PROFESSIONAL CONDUCT 1.7

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT.....................................................................................1

MEMORANDUM OF LAW ........................................................................................5

I.    BSF'S AND DCG'S REPRESENTATION OF MS. ISACKSON DOES NOT VIOLATE MASSACHUSETTS RULE OF PROFESSIONAL CONDUCT 1.7. 5

    A.    Massachusetts Rule of Professional Conduct 1.7. ...................................6

    B.    Rule 1.7(b) Permits BSF and DCG to Represent Ms. Isackson.................8

        1.    Rule 1.7(b)(1) Is Met. ...................................................................8

        2.    Rule 1.7(b)(2) Is Met. ...................................................................9

        3.    Rule 1.7(b)(3) Is Met. .................................................................10

        4.    Rule 1.7(b)(4) Is Met .................................................................11

    C.    The Conflict from the Representations of Ms. Isackson, Mr. Zangrillo, and Mr. Giannulli Should Not Be Imputed to BSF and DCG Generally or, at Minimum, the Imputation Is Mitigated...........................................12

        1.    A Different Team of Lawyers Represents Each Affected Client. 12

        2.    BSF and DCG Have Committed to Not Being Involved in Any Cross-Examination of Ms. Isackson. ..........................................16

        3.    In Addition to the Cross-Examination Restriction, BSF and DCG Have from the Beginning of the Concurrent Representations Instituted Robust and Effective Screening Measures. .................16

CONCLUSION ............................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Commonwealth v. Cousin*,
  478 Mass. 608 (2018) ......................................................................................................... 7

*Commonwealth v. Jordan*,
  49 Mass. App. Ct. 802 (2000) ......................................................................................... 15

*NFC, Inc. v. General Nutrition, Inc.*,
  562 F. Supp. 332 (D. Mass. 1983) ............................................................................. 17, 18

*Northrop v. Am. Express Co.*,
  No. 09-cv-005-TCK-TLW, 2010 WL 11561570 (N.D. Okla. Feb. 3, 2010) ......................... 11

*Thomalen v. Marriott Corp.*,
  No. 90-40140-NMG, 1994 WL 524123 (D. Mass. Sept. 19, 1994) ................................. 4, 17

*United States v. Arias*,
  351 F. Supp. 3d 198 (D. Mass. 2019) ......................................................................... 4,13

*United States v. Carr*,
  322 F. Supp. 3d 612 (E.D. Pa. 2018) .................................................................... 2, 4, 14

*United States v. Foster*,
  469 F.2d 1 (1969) .............................................................................................................. 1

*United States v. Laureano-Perez*,
  797 F.3d 45 (2015) ........................................................................................................... 9

*United States v. Stein*,
  410 F. Supp. 2d 316 (S.D.N.Y. 2016) ..................................................................... 5, 16, 18

*Wheat v. United States*,
  486 U.S. 153 (1988) ............................................................................................... 1, 2, 5, 7

**Rules**

Mass. R. Prof. C. 1.1 .......................................................................................................... 8

Mass. R. Prof. C. 1.3 .......................................................................................................... 8

Mass. R. Prof. C. 1.5(c)(3) ............................................................................................... 10

Mass. R. Prof. C. 1.7(a) ................................................................................................. 2, 6

Mass. R. Prof. C. 1.7(a)(1) ................................................................................................. 7

Mass. R. Prof. C. 1.7(a)(2) ................................................................................................. 7

Mass. R. Prof. C. 1.7(b)(1) .......................................................................................... 2, 5, 8

Mass. R. Prof. C. 1.7(b)(2) .......................................................................................... 2, 5, 9

Mass. R. Prof. C. 1.7(b)(3) ..................................................................................... 3, 6, 10, 11

Mass. R. Prof. C. 1.7(b)(4) ...................................................................................... 3, 6, 11

Defendant Davina Isackson pled guilty in this matter pursuant to a publicly filed cooperation agreement on May 1, 2019. (*Isackson*, ECF Nos. 315, 322.) Throughout this case, David K. Willingham and Michael V Schafler of Boies Schiller Flexner LLP ("BSF") and Peter E. Gelhaar and Alexander K. Parachini of Donnelly, Conroy & Gelhaar, LLP ("DCG") have been Ms. Isackson's chosen counsel. In a related but separately charged matter, *United States v. Sidoo, et al.,* 19-CR-10080-NMG ("*Sidoo*"), in which Ms. Isackson may be called as a witness for the government, other lawyers from the BSF firm represent Defendant Robert Zangrillo, and other lawyers from the DCG firm represent Defendant Mossimo Giannulli. From the outset of the representation of Ms. Isackson, Mr. Zangrillo, and Mr. Giannulli, all counsel and their firms have taken significant screening and separation measures to ensure that counsel represent all clients consistent with their ethical obligations, including instituting prophylactic measures to ensure that each client receives zealous, effective, and ethical representation.

## PRELIMINARY STATEMENT

The concurrent representation issue in this case arises from the fact that Ms. Isackson, who does not know and has not (to her knowledge) ever spoken with or met Mr. Zangrillo or Mr. Giannulli, is a cooperator and may be called as a government witness in a trial against Mr. Zangrillo and/or Mr. Giannulli. Recognizing their professional responsibilities, Ms. Isackson's right to choose her attorneys, and this Court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession" and that these "legal proceedings appear fair," Ms. Isackson's counsel and the government jointly requested a hearing to address the concurrent representation and waiver of conflicts. (*Isackson*, ECF No. 349.); *Wheat v. United States*, 486 U.S. 153, 160 (1988); *United States v. Foster*, 469 F.2d 1 (1969). The Court ordered Ms. Isackson's counsel to address the concurrent representation

issues as they relate to Massachusetts Rule of Professional Conduct 1.7. (*Isackson*, ECF No. 354.)

Whether a defendant may waive her right to conflict-free representation is a fact-intensive and individualized inquiry. *See Wheat*, 486 U.S. at 164. This inquiry begins, however, with the rebuttable presumption in favor of a defendant's choice of counsel. *Id.* Professional ethics also guide the inquiry. *See United States v. Carr*, 322 F. Supp. 3d 612, 616 (E.D. Pa. 2018).

Massachusetts Rule of Professional Conduct 1.7 prohibits a lawyer from representing "a client if the representation involves a concurrent conflict of interest." Mass. R. Prof. C. 1.7(a). This bar, however, is not absolute. Rule 1.7 allows the affected clients to waive the concurrent conflict where four conditions are met.

- *First, when "the lawyer reasonably believes" he can "provide competent and diligent representation to each affected client."* Mass. R. Prof. C. 1.7(b)(1).
    - Here, BSF and DCG are experienced counsel and are aware of and sensitive to their ethical obligations to Ms. Isackson and the Court. Counsel believe they can ethically, competently and diligently represent Ms. Isackson, and avow to notify Ms. Isackson and the Court should they lose confidence in their ability to ethically represent Ms. Isackson.

- *Second, when "the representation is not prohibited by law."* Mass. R. Prof. C. 1.7(b)(2).
    - Here, there is no legal prohibition, such as the statutory prohibitions against former government counsel taking on certain criminal representations, to the concurrent representation.

- *Third, when "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal."* Mass. R. Prof. C. 1.7(b)(3).

  - Here, neither Ms. Isackson on the one hand nor Mr. Zangrillo or Mr. Giannulli on the other hand will be asserting a "claim" against one another. At most, Ms. Isackson will be called as a witness to testify as to facts that are within her personal knowledge and experience. She is not adverse to Mr. Zangrillo or Mr. Giannulli in a civil matter, nor is she a victim of the criminal scheme charged in *Sidoo*.

- *Fourth, when each affected client provides their informed written consent.* Mass. R. Prof. C. 1.7(b)(4).

  - Here, Ms. Isackson has provided her informed written consent and will continue to do so. Messrs. Zangrillo and Giannulli have as well, and their consents have been accepted by the Court in *Sidoo*.

Therefore, as explained in detail below, all four factors allowing concurrent representation under Rule 1.7 are met.

Further, this case presents two key circumstances that distinguish it from cases in which courts have concluded that concurrent representation was inappropriate. First, the concurrent representation issue raised in Ms. Isackson's matter exists only because of the general presumption that a lawyer's conflicts are imputed to his entire law firm. Significantly, in this case, *different individual attorneys* at BSF and DCG represent Ms. Isackson, Mr. Zangrillo, and Mr. Giannulli, respectively. The cases in which courts have disallowed concurrent representation under Rule 1.7 (either the Massachusetts rule or its Model Rule analog)

predominantly involve concurrent representation by the same *lawyer*—not simply the same firm. *See, e.g.*, *United States v. Arias*, 351 F. Supp. 3d 198, 201 (D. Mass. 2019); *Carr*, 322 F. Supp. 3d at 614-15. Courts have found, including in the *Sidoo* case, that concurrent representation was permissible where the involved lawyers and law firms instituted robust and timely screening and separation measures. *See, e.g.*, *Thomalen v. Marriott Corp.*, No. 90-40140-NMG, 1994 WL 524123 (D. Mass. Sept. 19, 1994); (*Sidoo*, ECF No. 416). In such instances, the imputation of the conflict of each lawyer to the law firm can be mitigated, if not obviated.

Second, BSF and DCG have—from the inception of the concurrent representations— each taken meaningful steps and implemented robust measures to ensure that Ms. Isackson, Mr. Zangrillo, and Mr. Giannulli are each zealously and effectively represented and that the confidences of each are safely sequestered. Among other things, both firms have erected ethical screens and electronic firewalls, and have instructed their attorneys and staff not to discuss these matters outside of their particular case teams. (*Isackson*, ECF Nos. 352-1 at ¶ 4, 353-2 at ¶ 5.) Further, BSF has staffed Ms. Isackson's and Mr. Zangrillo's cases from offices in Los Angeles and New York, respectively. (*Isackson*, ECF Nos. 352-1 at ¶ 4(d).) Finally, the BSF and DCG lawyers representing Mr. Zangrillo and Mr. Giannulli, respectively, have committed not to be involved in the cross-examination of Ms. Isackson, including the preparation of any such cross-examination. (*Sidoo*, ECF Nos. 401 at 10 n.4, 445-4 at ¶ 5, 543 at 15.) These measures are aimed at preventing the cross-dissemination of confidential and/or privileged information relevant to one client from being shared with attorneys and staff representing another client. Additionally, these measures safeguard against the lawyers representing Ms. Isackson putting the interests of another firm client over Ms. Isackson. Under these circumstances, the

presumption in favor of Ms. Isackson's choice of counsel should prevail, and this Court should perform the conflict inquiry of Ms. Isackson and, if satisfied, accept her waiver. *See Wheat*, 486 U.S. at 164; *see generally United States v. Stein*, 410 F. Supp. 2d 316 (S.D.N.Y. 2016).

<u>MEMORANDUM OF LAW</u>

## I. BSF'S AND DCG'S REPRESENTATION OF MS. ISACKSON DOES NOT VIOLATE MASSACHUSETTS RULE OF PROFESSIONAL CONDUCT 1.7.

Assuming that the government calls Ms. Isackson to testify in a trial against Mr. Zangrillo or Mr. Giannulli, which is not a certainty at this point, the presumption in favor of Ms. Isackson's right to continue to be represented by counsel of her choice prevails because Rule 1.7(b)'s requirements permitting concurrent representation are met:

- *First*, the facts here lead Ms. Isackson's counsel to "reasonably believe[ ]" they "will be able to provide competent and diligent representation to" Ms. Isackson. Mass. R. Prof. C. 1.7(b)(1). As Magistrate Judge Kelley recognized, BSF has taken "considerable steps" to ensure that the individual attorneys representing Ms. Isackson and Mr. Zangrillo are completely walled off from each other. (*Sidoo*, ECF No. 416 at 2.) DCG has taken substantially the same actions as BSF to wall off the individual attorneys at DCG representing Ms. Isackson from those representing Mr. Giannulli. (*Isackson*, ECF No. 353-2 at ¶¶ 4-6.) These and other measures ensure that BSF and DCG will "provide competent and diligent representation" to Ms. Isackson, Mr. Zangrillo, and Ms. Giannulli, respectively. *See* Mass. R. Prof. C. 1.7(b)(1). As detailed below, these and other facts readily distinguish this case from others where courts have held that a concurrent representation could not proceed.

- *Second*, counsel's representation of Ms. Isackson is not prohibited by law. *See id.* at 1.7(b)(2). There is no legal prohibition to either BSF or DCG's representation of

Ms. Isackson.

- *Third*, Ms. Isackson is not asserting a claim against either Mr. Zangrillo or Mr. Giannulli in this or any other proceeding. *See id.* at 1.7(b)(3). Ms. Isackson does not know and does not believe she has ever spoken with either Mr. Zangrillo or Mr. Giannulli. In the criminal trial of either Mr. Zangrillo or Mr. Giannulli—should there be one— Ms. Isackson—should she be called—will be a witness. She will not "assert a claim," as that phrase is understood, against either Mr. Zangrillo or Mr. Giannulli. She will testify truthfully as to facts in her personal knowledge or experience.

- *Fourth*, all clients involved have provided their informed written consent. *See id.* at 1.7(b)(4); (*Isackson*, ECF No. 353-1 at ¶ 6; *Sidoo*, ECF No. 416 at 3; *Sidoo*, ECF No. 540; *Sidoo*, ECF No. 543 at 28.)

Further, the Government does not presently oppose BSF's and DCG's representation of Ms. Isackson and has, subject to a reservation of rights to continue to examine and analyze the issue, already "agreed [at least as to Mr. Zangrillo] that any conflict of interest in the case may be waived." (*Isackson*, ECF No. 353 at ¶ 5; *Sidoo*, ECF No. 416 at 2.) Accordingly, as explained in further detail below, the Rule 1.7 requirements are met, the well-established presumption in favor of Ms. Isackson's choice of counsel prevails, and this Court should accept Ms. Isackson's conflict waiver.

### A.    *Massachusetts Rule of Professional Conduct 1.7.*

Massachusetts Rule of Professional Conduct 1.7 prohibits a lawyer from representing "a client if the representation involves a concurrent conflict of interest." Mass. R. Prof. C. 1.7(a). Rule 1.7 safeguards an attorney's duty of loyalty and independent judgment as these "are essential elements" in the attorney-client relationship. Mass. R. Prof. C. 1.7 cmt. 1; *see also*

*Commonwealth v. Cousin*, 478 Mass. 608, 617 (2018) (providing examples of when an attorney's loyalty is divided and explaining that such divided loyalties are "an unmistakable stain on the attorney-client relationship"). Rule 1.7 reads in its entirety:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>> (2) the representation is not prohibited by law;
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>> (4) each affected client gives informed consent, confirmed in writing.

Mass. R. Prof. C. 1.7. Whether a defendant can waive a conflict of interest pursuant to Rule 1.7(b) is a fact-intensive and individualized inquiry. *See Wheat*, 486 U.S. at 164.

Here, at this point it is uncertain whether Ms. Isackson will testify in a trial against Mr. Zangrillo and/or Mr. Giannulli, so the representations may not be directly adverse. *See* Mass. R. Prof. C. 1.7(a)(1); *cf. id.* at cmt 6. Further, BSF and DCG attorneys representing Messrs. Zangrillo and Giannulli have committed to not becoming involved in the cross-examination of Ms. Isackson, so the risk that the representation of any client will become materially limited is mitigated. *See* Mass. R. Prof. C. 1.7(a)(2). Under these circumstances, a concurrent conflict may not ultimately arise. Even if a conflict arises, because the

circumstances here meet the Rule 1.7(b) requirements, BSF's and DCG's representation of Ms. Isackson does not violate the ethical rules.

> **B.      Rule 1.7(b) Permits BSF and DCG to Represent Ms. Isackson.**

> **1.      Rule 1.7(b)(1) Is Met.**

The commentary to Rule 1.7(b) explains that whether a client may consent to an attorney's conflict of interest "is typically determined by considering whether the interests of the [affected] clients will be adequately protected if the clients are permitted to give their informed consent to representation burdened by the conflict of interest."  Mass. R. Prof. C. 1.7 cmt. 15.  That inquiry requires "the lawyer [to] reasonably believe[ ] that the lawyer will be able to provide competent and diligent representation to each affected client."  Mass. R. Prof. C. 1.7(b)(1); *id.* cmt. 15.  The Massachusetts Rules of Professional Conduct define competent representation as "requir[ing] the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."  Mass. R. Prof. C. 1.1.  Regarding diligence, the Rules state that "[a] lawyer shall act with reasonable diligence and promptness in representing a client.  The lawyer should represent a client zealously within the bounds of the law."  Mass. R. Prof. C. 1.3.

Attorneys Willingham, Schafler, Gelhaar, and Parachini are all experienced attorneys who have represented numerous criminal defendants and collectively possess over 80 years of experience.  They are confident of their ability to competently represent Ms. Isackson.  *See* Mass. R. Prof. C. 1.1.

So too with diligence.  Attorneys Willingham, Schafler, Gelhaar, and Parachini are experienced defense counsel who have developed a strong attorney-client relationship with Ms. Isackson and will continue to diligently represent her.  *See* Mass. R. Prof. C. 1.3.  To the

extent that BSF's concurrent representation of Mr. Zangrillo and DCG's concurrent

representation of Mr. Giannulli present conflicts of interest that call into question

Ms. Isackson's attorneys' ability to diligently represent her, two facts distinguish this case from

other concurrent representation cases.[1]  First, here, different individual attorneys at BSF and

DCG represent Ms. Isackson, Mr. Zangrillo, and Mr. Giannulli, respectively.  Second, BSF and

DCG have each taken robust screening and separation measures to address any concern of

impermissible sharing of information between defense teams.  These distinctions are addressed

in detail below.  *See* Section I.C, *infra*.

**2.      Rule 1.7(b)(2) Is Met.**

The second factor requires that counsels' representation of Ms. Isackson is not

prohibited by law.  *See* Mass. R. Prof. C. 1.7(b)(2).  Although counsel has been unable to find

Massachusetts cases outlining the contours of this factor, the commentary to Rule 1.7(b)(2)

provides a couple of examples of representations prohibited by law.  First, the commentary

points to federal criminal statutes that prohibit former government lawyers from undertaking

certain representations even if a former client consents.  *See* Mass. R. Prof. C. 1.7(b)(2) cmt. 16.

The commentary's second example discusses limits on a lawyer's ability to represent state,

county, or municipal governments or agencies on the one hand, and a private party on the other,

on matters pending before the same government or agency or in which the public entity has an

interest, even if there is some alignment of interests.  *Id.*  These examples suggest that the

prohibitions contemplated by Rule 1.7 are statutory bans on a lawyer's ability to represent

---

[1] Counsel is aware of *United States v. Laureano-Perez*, 797 F.3d 45 (2015), where the First Circuit affirmed the district court's disqualification of an attorney because of a conflict of interest.  There, however, the conflict arose out of that lawyer being paid by a third-party.  *Id.* at 56.  The facts related to that conflict are inapposite here, and for that reason *Laureano-Perez* is not discussed.

someone. No such limits are present here. Ms. Isackson, Mr. Zangrillo, and Mr. Giannulli are private persons, and all attorneys involved have been in private practice for many years. Counsel are unaware of any legal authority under state or federal law that would prohibit the representations here.

### 3.      Rule 1.7(b)(3) Is Met.

The third factor requires that "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal." Mass. R. Prof. C. 1.7(b)(3). A plain reading of "assertion of a claim" and the commentary to the rules suggests that Rule 1.7(b)(3) is limited to situations where one client is in a lawsuit against another client. *Id.* at cmt. 23 ("Paragraph (b)(3) prohibits representation of opposing parties in litigation, regardless of the clients' consent.") This reading of the phrase "assertion of a claim" is supported by how the word "claim" is used elsewhere in the rules, which generally refers to causes of action. *See, e.g.*, Mass. R. Prof. C. 1.5(c)(3) (fee agreement must state in writing "the nature of the claim, controversy, and other matters with reference to which the services are to be performed"); Rule 1.6 (lawyer may disclose confidential information "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved"); Rule 1.8 (lawyer may not make aggregate settlement of claims against multiple clients without informed written consent, disclosing "the existence and nature of all the claims or pleas involved").

Further, in explaining the Rule 1.7(b)(3) requirement, the commentary to the rules states that the concern is "the institutional interest in vigorous development of each client's position when the *clients are aligned directly against each other in the same litigation* or other

proceeding or tribunal." *Id.* at 1.7(b)(3) cmt. 17 (emphasis added). Case law bears out this concern. *Northrop v. Am. Express Co.*, No. 09-cv-005-TCK-TLW, 2010 WL 11561570, at *3-*4 (N.D. Okla. Feb. 3, 2010) (concluding that the attorney representing the plaintiff and third-party defendant could represent both so long as he obtained both clients' consent and waiver because they did not assert claims against each other).

Here, Ms. Isackson and Mr. Zangrillo or Mr. Giannulli are not on opposite sides of the "v." in any litigation. Nor is she asserting claims against Mr. Zangrillo or Mr. Giannulli in any other proceeding such that their interests would be directly aligned against each other within the meaning of Rule 1.7(b)(3). *See* Mass. R. Prof. C. at 1.7(b)(3); *id.* at cmt. 17. Accordingly, the facts here meet the third factor. Ms. Isackson is, at most, a prospective witness in the prosecutions of Mr. Zangrillo and/or Mr. Giannulli. She is not asserting any "claims" against them, nor are they asserting any "claims" against her.

### 4. Rule 1.7(b)(4) Is Met.

Finally, all clients must provide their informed written consent. *See id.* at 1.7(b)(4). Ms. Isackson, Mr. Zangrillo, and Mr. Giannulli have provided their informed written consent. (*Isackson*, ECF No. 353-1 at ¶ 6; *Sidoo*, ECF No. 416 at 3; *Sidoo*, ECF No. 540; *Sidoo*, ECF No. 543 at 28.) Indeed, Magistrate Judge Kelley has already concluded that Mr. Zangrillo waived his right to separate counsel. (*Isackson*, ECF No. 416 at 3.) Magistrate Judge Kelley also allowed Mr. Giannulli to submit his waiver of right to separate counsel and has not stopped the DCG lawyer (Mr. Vien) from representing him for months now. (*Isackson*, ECF No. 540.) At Mr. Giannulli's Rule 44 hearing, Magistrate Judge Kelley stated that although she was "inclined to allow the waiver with regard to Ms. Isackson," she took the waiver under

advisement.[2]  (*Isackson*, ECF No. 543 at 28.)  Further, the Government does not oppose BSF and DCG's representation of Ms. Isackson, subject to a reservation of rights to continue to examine and analyze the issue.  (*Isackson*, ECF No. 353 at ¶ 5; *Sidoo*, ECF No. 416 at 2.)  The final factor, therefore, is met.

### C.  The Conflict from the Representations of Ms. Isackson, Mr. Zangrillo, and Mr. Giannulli Should Not Be Imputed to BSF and DCG Generally or, at Minimum, the Imputation Is Mitigated.

Another important consideration with respect to the application of Rule 1.7 is that, here, *different individual lawyers* at BSF and DCG represent Ms. Isackson, Mr. Zangrillo, and Mr. Giannulli, respectively.  Moreover, the firms have instituted robust screening and separation measures to ensure that no confidential information about the Isackson matter passes or is available to the teams representing Mr. Zangrillo or Mr. Giannulli, or vice versa. (*Isackson*, ECF Nos. 353-1 at ¶ 4; 353-2 at ¶5.)  Further, Ms. Isackson's counsel have taken measures to safeguard Ms. Isackson's interests should she provide adverse testimony to Mr. Zangrillo or Mr. Giannulli at a future trial.

### 1.  A Different Team of Lawyers Represents Each Affected Client.

At BSF, attorneys Willingham and Schafler represent Ms. Isackson, while Matthew L. Schwartz represents Mr. Zangrillo.  (*Isackson*, ECF No. 353-1 at ¶ 1, 3.)  The Isackson and Zangrillo defense teams at BSF are staffed entirely out of separate offices:  the Isackson team is

---

[2] At Mr. Giannulli's Rule 44 hearing, Judge Kelley stated, "And the fact that the lawyers in this eleven-person firm have erected a firewall and have taken what seems to be pretty good steps to protect you [Mr. Giannulli] and Ms. Isackson from tainting each other's cases, that's great." As of the filing of this Joint Memorandum, no written order has issued from Judge Kelley, and DCG's representation of Mr. Giannulli and Ms. Isackson has continued since the time of Mr. Giannulli's Rule 44 hearing on August 27, 2019.

comprised of Los Angeles-based lawyers and staff; the Zangrillo team is made up entirely of East Coast, non-California-based lawyers and staff. (*Isackson*, ECF No. 353-1 at ¶ 1, 3.) At DCG, attorneys Gelhaar and Parachini represent Ms. Isackson, while George W. Vien and Joshua N. Ruby represent Mr. Giannulli. (*Isackson*, ECF No. 353-2 at ¶ 1, 3.) While the attorneys at DCG representing both Ms. Isackson and Mr. Giannulli are physically in Boston, DCG has instituted robust screening and separation measures, including strict limits on discussing *Isackson*, *Sidoo*, and related cases in the office, and taken additional actions to ensure these measures are implemented. (*Isackson*, ECF No. 353-2 at ¶ 5.)

This defense team structure for each team representing Ms. Isackson, Mr. Zangrillo, and Mr. Giannulli, respectively, presents materially different circumstances from cases where courts have found disqualifying conflicts. For example, in *United States v. Arias*, this Court rejected a defendant's waiver of her attorney's concurrent conflict of interest because the attorney was in violation of Massachusetts ethics rules. 351 F. Supp. 3d at 201. There, attorney Scott Gleason represented the defendant, Minerva Ruiz, in a criminal prosecution over the sale of heroin. *Id.* at 199. Gleason *himself* also represented a cooperating witness in a separate state proceeding to vacate an unrelated drug conviction. *Id.* at 199-200. The cooperating witness was set to testify at trial that Ruiz was present during the sale of heroin at issue in Ruiz's case and that Ruiz gestured to him where the drugs were hidden. *Id.* After the conflict came to light, Ruiz was willing to waive the conflict, but importantly the cooperating witness would not agree to waive it. *Id.* at 200. Finding that the cooperating witness's prior drug conviction could be used to impeach him at trial and that Gleason would have to cross-examine the cooperating witness at trial, this Court concluded that Gleason himself would be directly adverse to one of his clients. *Id.* at 201. The Court also noted that both Ruiz and the cooperating witness would have to

agree to waive the conflict, whereas one of the affected clients refused to waive.  *Id.*

Similarly, in *United States v. Carr*, the court concluded that the *same* attorney, John J. Griffin, could not concurrently represent defendant Andrew Carr and another defendant identified as Client No. 1.  322 F. Supp. 3d at 614, 619-20.  There, the Government charged Carr and Client No. 1, in separate cases, of being members of the same conspiracy to distribute methamphetamine.  *Id.* at 614.  Client No. 1 was a cooperating witness who had already pled guilty and was awaiting sentencing.  *Id.*  Griffin agreed to represent Carr on appeal but not in any re-trial, and agreed to represent Client No. 1 at his sentencing.  *Id.* at 614-15.  Both Carr and Client No. 1 waived Griffin's conflict.  *Id.* at 617-18.  However, Griffin told the court at a conflict of interest hearing that he would *not* argue at Client No. 1's sentencing that Client No. 1 provided useful information regarding Carr.  *Id.* at 618.  Based on this statement, the court concluded that Griffin could not provide "competent and diligent representation" to Carr and Client No. 1 under the ethical rules, and that Client No. 1's waiver was insufficient to allow Griffin to continue to represent him.  *Id.* at 619.  Although the court accepted Carr's waiver, the court concluded that because Griffin's actions violated his duty of loyalty to Client No. 1, Griffin could not represent either client.  *Id.* at 619-20.

Both *Arias* and *Carr* present very different facts from those present here.  Both cases considered circumstances where the *same individual* attorney sought to represent more than one client with divergent interests.  Here, *different* attorneys at BSF and DCG represent the affected clients.  Also, unlike in *Arias*, all affected clients here have waived the conflict.  (*Isackson*, ECF No. 353-1 at ¶ 6; *Sidoo*, ECF No. 353-2 at ¶ 4; *Sidoo*, ECF No. 416; *Sidoo*, ECF No. 543.) Should the Court require a further waiver from Ms. Isackson similar to those provided by Messrs. Zangrillo and Giannulli, she will provide it.  And here, Ms. Isackson understands that

no lawyers from BSF or DCG will take any part in cross-examining or preparing to cross-examine Ms. Isackson, should there be one.

Where courts have disqualified an attorney because a different attorney in his office represented another client and the concurrent representations raised a conflict of interest, the facts also were substantially different. For example, in *Commonwealth v. Jordan*, the court approved of the trial court's disqualification of a public defender, Alan Rubin, who affirmatively filed a motion to withdraw as counsel. 49 Mass. App. Ct. 802, 807, 811 (2000). Mr. Rubin sought to withdraw after he realized, a week before trial, that a different attorney in his office also represented the wife and co-defendant of the cooperating witness in the case Mr. Rubin sought to withdraw from. *Id.* at 807. There, the cooperating witness's wife would benefit from the cooperating witness's testimony by having her charges dismissed. *Id.* at 807. Further, because Mr. Rubin was a supervisor in the public defender's office, he had discussed the wife's case with his colleague multiple times. *Id.* Under these circumstances, the court concluded that the trial court properly allowed Mr. Rubin to withdraw as counsel. *Id.* at 811.

Here, the facts are, again, materially different. In *Jordan*, Mr. Rubin's supervisory role included him directly supervising his colleague's handling of the wife's case and learning material information about her case. *Id.* at 807. In Ms. Isackson's case, the defense teams for the affected clients have no supervisory relationship to each other, or any other relationship within their respective firms that would cause them to obtain improper information. Indeed, as described above, the robust screening and separation measures BSF and DCG have taken ensure that information is kept separate. *See* Preliminary Statement (citing (*Isackson*, ECF Nos. 352-1 at ¶ 4, 353-2 at ¶ 5.)), *infra*; Section I.C.3, *supra*.

### 2. BSF and DCG Have Committed to Not Being Involved in Any Cross-Examination of Ms. Isackson.

No attorney from BSF nor DCG will cross-examine Ms. Isackson. This is an important factor that supports allowing BSF and DCG to continue to represent Ms. Isackson. In *United States v. Stein*, several persons were indicted for allegedly creating fraudulent tax shelters and concealing these shelters from the IRS. 410 F. Supp. 2d at 318. The government moved to disqualify one of the defendant's attorneys and his firm, Kostelanetz & Fink ("K&F"), because K&F previously represented a co-conspirator in the alleged scheme and was a cooperating witness for the government who would likely testify at trial, and K&F also represented an unidentified co-conspirator. *Id.* Even though the court imputed the individual attorneys' conflict to all of K&F, *id.* at 326, the court concluded that the conflict could be waived "as long as K&F ha[d] no role in cross-examining" the cooperating witness and the unidentified co-conspirator. *Id.* at 328. The court reached this conclusion even though K&F was a small, 13-person firm and the safeguards K&F instituted were "not particularly reassuring." *Id.* at 325. Important to the court was the fact that not many firms specialized in complex criminal tax cases and the defendant would suffer prejudice by disqualifying K&F. *Id.* at 328.

Again, here, neither BSF nor DCG will have any role in cross-examining Ms. Isackson. Nor will BSF or DCG have any role in preparing the cross-examination of Ms. Isackson. (*Isackson*, ECF No. 353-1 at ¶4.)

### 3. In Addition to the Cross-Examination Restriction, BSF and DCG Have from the Beginning of the Concurrent Representations Instituted Robust and Effective Screening Measures.

The specific screening and separation measures BSF and DCG have taken include

ensuring that:

(1) individuals working on Ms. Isackson's behalf do not work on Mr. Zangrillo or Mr. Giannulli's behalf, and vice versa;

(2) physical and electronic case files for the Isackson matter are kept separate from and are inaccessible to lawyers and staff working on the Zangrillo and/or Giannulli matters;

(3) there has been no communication about the Isackson and Sidoo cases between anyone working on Ms. Isackson's behalf and those working on behalf of Mr. Zangrillo or Mr. Giannulli;

(4) since the inception of the concurrent representations, the conflict issues were flagged and the separation and screening measures were promptly instituted; and

(5) no BSF or DCG lawyers will cross-examine Ms. Isackson or be involved in the preparation of her cross-examination. (*Isackson*, ECF Nos. 353-1 at ¶ 4, 353-2 at ¶5.)

Courts in this District have approved the use of ethical walls such as the ones implemented here. In *Thomalen*, plaintiff's counsel notified the court that a new attorney at his firm had previously represented the defendant while at a different firm. 1994 WL 524123, at *1. After learning of the conflict, plaintiff's attorney promptly circulated a memorandum in his office instructing all attorneys and staff not to communicate information about the case, or discuss it, in the presence of the conflicted attorney. *Id*. at *2. Case files would be kept behind a lock, and all communications related to the case would be sent to the plaintiff's attorney in a sealed envelope. *Id*. Finally, the conflicted attorney's office would be moved to a separate building. *Id*. The court declined to disqualify the plaintiff's attorneys because the efforts to segregate the conflicted attorney sufficed. *Id*. ("The 'Chinese wall' established by [plaintiff's attorney] to segregate [conflicted attorney] from this case is similar to that approved by Judge

Joseph Tauro (now Chief Judge of this District Court) in *NFC, Inc. v. General Nutrition, Inc.*, 562 F. Supp. 332 (D. Mass. 1983).") The court specifically pointed to the plaintiff's attorney's "promptness and diligence in establishing" the ethical wall and stated that the wall and other measures alleviated the court's concerns. *Id.*

So too here. The ethical walls built by BSF and DCG, as described above, the fact that these measures were implemented from the beginning of the concurrent representations, and the fact that BSF's teams are staffed in offices across the country from each other provide sufficient assurances to alleviate concerns. *Id.*; (*Isackson*, ECF Nos. 353-1 at ¶ 4, 353-2 at ¶ 5.)

Accordingly, for the reasons detailed above, Ms. Isackson's lawyers reasonably believe that the circumstances here permit them to continue to diligently, and ethically, represent Ms. Isackson.

## **CONCLUSION**

For the reasons detailed above, this Court should accept Ms. Isackson's waiver of any conflict of interest, because her representation is well within the ethical standards and does not violate Massachusetts Rule of Professional Conduct 1.7.[3]

---

[3] Prior to the undersigned counsel's filing of this brief, the government filed, under seal, a memorandum concerning Rule 1.7. Candidly, undersigned counsel were surprised by its contents for a number of reasons. First, since Messrs. Zangrillo's and Giannulli's Rule 44 hearings were conducted over four months ago on August 27, 2019, the government has not moved to disqualify their counsel or any of the undersigned counsel. Second, in the present case, the government joined in the Joint Motion for Court Inquiry Pursuant to Fed. R. Crim. P. 44(c) filed on December 23, 2019, and did not raise any concerns about the undersigned counsel's role in the present case. (*Isackson*, ECF No. 349.) Third, the parties, including the government, recently jointly filed a Joint Memorandum in Support of the Parties' Joint Motion for Court Inquiry. (*Id.*, ECF No. 353.) In the joint memorandum, although the government purported to reserve its right in the future to seek disqualification of counsel "should the Government recognize that any conflict mandates either disqualification or further inquiry," the government nonetheless stated that *"[i]t does not oppose BSF's or DCG's continued representation of Ms. Isackson."* (*Id.*, ECF No. 353 at 2.) Fourth, the government raised no objection to the undersigned counsel's continued representation of Ms. Isackson during several recent substantive discussions with undersigned counsel. Finally, without revealing the contents of the government's under-seal filing, Ms.

Dated:  January 23, 2020

Respectfully submitted,

DAVINA ISACKSON
By her attorneys,

*/s/ David K. Willingham*
David K. Willingham (*pro hac vice*)
Michael V Schafler (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017
(213) 629-9040
dwillingham@bsfllp.com
mschafler@bsfllp.com

Peter E. Gelhaar (BBO# 188310)
Alexander K. Parachini (BBO# 569567)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
(617) 720-2880
peg@dcglaw.com
akp@dcglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that this document will be filed electronically and will be sent by electronic mail to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any parties indicated as non-registered participants on January 23, 2020.

*/s/ David K. Willingham*
David K. Willingham

Isackson would respectfully refer the Court to Judge Kaplan's well-reasoned decision in *United States v. Stein*, wherein he denied the government's motion to disqualify a "thirteen attorney boutique" in connection with a concurrent representation (as described more fully above), so long as no firm attorney cross-examined a firm client and the firm adopted satisfactory screening and insulation procedures— both conditions being amply addressed by undersigned counsel in the present case. *Stein*, 410 F. Supp. 2d at 330.